**UNICAL AVIATION INC., Plaintiff,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE Defendant.**

**No. CV 02–2910 ABC (SHx).**

United States District Court, C.D. California.

Nov. 18, 2002.

James Tam, James Tam Law Offices, Monterey Park, CA, for Unical Aviation Inc, plaintiff.

Donna J Ford, AUSA—Office of U.S. Attorney, Civil Division, Los Angeles, CA, for United States Immigration & Naturalization Service, defendant.

## ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COLLINS, District Judge.

Before the Court on November 18, 2002, are cross-motions for summary judgment. The Court has considered the materials submitted by the parties, the case file, and the applicable law. For reasons articulated below, the Court DENIES Defendant's Motion for Summary Judgment, and GRANTS Plaintiff's Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

Chia Sin Lin, an employee of Plaintiff Unical Aviation, entered the United States on October 26, 1996, with a nonimmigrant student visa. Before working for Unical, Mr. Lin had been employed by Fatair, Inc. from 1997 to 1999. In 1997, Fatair successfully petitioned the Immigration and Naturalization Service ("INS") to change Mr. Lin's nonimmigrant status from student to "marketing specialist." The INS approved the petition on May 20, 1997, and granted Mr. Lin an authorized stay in the United States as a nonimmigrant worker in a "specialty occupation" from May 20, 1997 to March 1, 2000.

In August 1999, Mr. Lin accepted an offer of employment from Unical as a senior marketing analyst. On October 5, 1999, Unical petitioned the INS to extend Mr. Lin's authorized stay beyond the March 1, 2000 expiration date granted under the petition filed by Fatair. In support of the petition, Unical submitted, among other things, a company profile, an organizational chart, and a brochure. Certified Administrative Record ("CAR") at 167–74, 182–87. Unical also gave the INS copies of Mr. Lin's resume, diploma, offer letter, and job description. CAR at 161–64.

The INS denied the petition on December 3, 1999, concluding that Unical failed to establish that Mr. Lin's position qualified as a "specialty occupation." CAR at 76–77. In making its decision, the INS compared the duties of a "marketing research analyst"[1] with Mr. Lin's duties at Unical as a senior market analyst; the INS found that the job duties were not comparable. The INS also noted that, according to the Handbook, a position as a "marketing research analyst" generally requires graduate training, which Mr. Lin did not have.

Unical filed an appeal and included letters from Unical's president, Mr. Han Tan, and attorney, Mr. James Tam. CAR at 28–30, 67–72. On December 21, 2000, the Office of Administrative Appeals (OAA) dismissed the appeal. The OAA deter-

---

1. The INS derives these job descriptions from the Department of Labor's Occupational Outlook Handbook ("Handbook"). The INS refers to the Handbook when determining whether an occupation satisfies the "specialty occupation" criteria.

mined that while Mr. Lin's baccalaureate degree qualified him to perform the duties of the proffered position, the duties of the position did not meet any of the four "speciality occupation" criteria. CAR at 33–34. Instead, the position combined the duties of a "manufacturer's and wholesale sales representative" with those of a "marketing manager." Because the Handbook did not indicate that these positions require a college degree, the OAA concluded that Unical had not demonstrated that the position was a "specialty occupation" within the meaning of the regulations. The OAA added that Unical had not "shown that it has, in the past, *required* the services of individuals with baccalaureate or higher degrees *in a specialized area* for the proffered position. In addition,... [Unical] ha[d] not shown that similar firms *require* the services of such individuals in parallel positions." CAR at 34 (emphasis in original).

On January 25, 2001, Unical filed a motion to reopen and reconsider the petition. The OAA issued a decision on January 31, 2002, granting the motion to reopen and affirming its dismissal decision. CAR at 1–5.

Unical subsequently filed a Complaint in this Court. On September 19, 2002, the INS filed a Motion for Summary Judgment. Unical filed its Opposition on October 8, 2002. Unical filed a Cross-motion for Summary Judgment on October 4, 2002. The INS filed an Opposition on October 18, 2002.[2]

## II. DISCUSSION

### A. Legal Standard

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact,

and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial, the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986)(quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984)).

Once the moving party satisfies the initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ..., must set forth specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 at 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Griffeth v. Utah Power & Light Co.*, 226 F.2d 661, 669 (9th Cir.1955).

A court reviews INS decisions under an abuse of discretion standard. *Occidental Eng'g v. INS*, 753 F.2d 766, 768 (9th Cir. 1985). An abuse of INS discretion may be found if there is no evidence to support the INS decision or if the INS based its deci-

---

2. The Court rejects both parties' attempts to file exhibits not included in the CAR. The INS filed a Declaration, which was not only outside of the CAR, but was also replete with argument and speculation. The Court did not consider the Government's Declaration or the extraneous exhibits submitted by Unical.

sion on an improper understanding of the law. *Kaliski v. District Director of INS*, 620 F.2d, 214, 216 n. 1 (9th Cir.1980) (citing *Song Jook Suh v. Rosenberg*, 437 F.2d 1098, 1102 (9th Cir.1971)). Moreover, courts must give strong deference to administrative agencies' constructions of applicable regulations. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

## B. Analysis

An alien must satisfy two requirements to qualify for an extension of his visa as a worker in a "specialty occupation." *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b); 8 U.S.C § 1184(i)(1). An alien must be (1) employed in a "specialty occupation"[3] and (2) qualified to perform services in the "specialty occupation." 8 C.F.R. § 214.2(h)(4)(i)(A)(1). To qualify as a "specialty occupation," the position must meet one of the following criteria:

1. A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

2. The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

3. The employer normally requires a degree or its equivalent for the position; or

4. The nature of the specific duties are so specialized and complex that knowledge required to perform the

duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). Unical bears the burden of proof of establishing Mr. Lin's eligibility for an extension of status as a worker in a "specialty occupation." 8 U.S.C. § 1361 (West Supp.1990).

The INS determined that Unical had not submitted sufficient evidence to demonstrate that Mr. Lin was employed in a "specialty occupation." On appeal, the OAA reached the same conclusion under a different rationale. Unical challenges the INS's conclusion in three respects. First, Unical argues that it satisfied the "specialty occupation" criteria by submitting its organizational chart, which indicates that Mr. Lin and most of its employees have baccalaureate degrees. CAR at 23. Unical also contends that Mr. Lin's position matches the Handbook's description of a "marketing research analyst," which is a listed "specialty occupation." Unical also points out that Mr. Lin performed similar, if not identical, duties at Fatair, and the INS approved Fatair's petition on Mr. Lin's behalf.

The Court finds that the INS abused its discretion in determining that Mr. Lin's position at Unical is not comparable to the "marketing research analyst" position described in the Handbook. The Unical job description is virtually indistinguishable from the duties of a "marketing research analyst":

### Marketing Research Analyst Description

• Concerned with the potential sales of a product.

---

**3.** The term "specialty occupation" means an occupation that requires—

   (A) theoretical and practical application of a body of highly specialized knowledge, and

(B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

8 U.S.C. § 1184(i)(1).

- Gather data on past sales to predict future sales.
- Evaluate sales data and make recommendations to employers.
- Provide a company's management with information needed to make decisions on the promotion, distribution, design and pricing of products or service.

CAR at 118.

### Unical Job Description

- To liaise with Airline and Maintenance Repair Organization (MRO) customers in China for supply of parts and services.
- To analyze and forecast the airline and MRO logistic and spare demand, generate plans to capture business.
- To provide after-sales services to the customers in China
- To develop new products and services for the China market.
- Any duty/project as assigned by your Supervisor or the Management from time-to-time.

CAR at 162. Both positions involve gathering and evaluating sales data in order to generate more business and develop new products. And, instead of addressing whether these positions were in fact comparable, the OAA chose to adopt an entirely different rationale for denying the petition.

However, even under the OAA's rationale, Unical demonstrated that Mr. Lin is employed in a "specialty occupation." Unical submitted sufficient evidence to show that it normally requires at least a baccalaureate degree for this position, satisfying the third of the "specialty occupation" criteria. While the OAA is correct that Mr. Lin's job description did not list a baccalaureate degree as a requirement, the OAA had a copy of Unical's organizational chart which indicated that all of the employees in Unical's Marketing Department, including Mr. Lin, have baccalaureate de-

grees. In fact, Mr. Lin's colleague in Marketing Support, Mr. Adrian Mulyadi, has a Master's Degree in Business Administration ("MBA").

The educational backgrounds of Mr. Lin and his colleague also show that, contrary to the OAA's determination, Unical satisfied the first criteria by demonstrating that it requires the services of individuals with baccalaureate or higher degrees in a specialized area. The INS had evidence indicating that Mr. Lin obtained a degree in Business Administration with a concentration in Marketing and that Mr. Lin's colleague had an MBA.

The INS also cites Mr. Lin's lack of a graduate degree as another basis for its conclusion that Mr. Lin's job description does not correspond to the "marketing research analyst" position. However, the INS has rejected specific degree requirements in similar circumstances. *Augat, Inc. v. Tabor*, 719 F.Supp. 1158, 1161 (D.Mass.1989) ("Furthermore, the INS itself has not applied an absolute degree requirement as the test of whether an occupation is a profession."). In determining whether an occupation is a "profession," the INS looks to "whether there is a general requirement of specialized study for the post, coupled with whether the position has complex and discretionary duties." *Id.* As indicated above, Unical submitted sufficient evidence to demonstrate that there is a requirement of specialized study for Mr. Lin's position. Furthermore, on appeal, the OAA determined that he was qualified for the proffered position. Because the evidence does not support its decision, the INS abused its discretion in denying Mr. Lin's request to extend his authorized stay.

### III. CONCLUSION

For the reasons stated above, the Court hereby DENIES Defendant's Motion for

Summary Judgment. Plaintiff's Motion for Summary Judgment is GRANTED.

**SO ORDERED.**